J. Paul Gignac (CSB # 125676)
j.paul@aogllp.com
Kiley L. Grombacher (CSB#245960)
kgrombacher@aogllp.com
ARIAS OZZELLO & GIGNAC LLP
4050 Calle Real, Suite 130
Santa Barbara, California 93110
Telephone: (805) 683-7400
Facsimile: (805) 683-7401

Howard A. Goldstein (CSB #166005)
lohag@att.net.
HOWARD A. GOLDSTEIN, ESQ.
Law Office of Howard A. Goldstein
13701 Riverside Drive #608
Sherman Oaks, California 91423

Attorneys for Plaintiff

Bartholomew L. McLeay *pro hac vice*
Bartholomew.Mcleay@kutakrock.com
Jeremy Fitzpatrick *pro hac vice*
Jeremy.Fitzpatrick@kutakrock.com
Paul R. Gwilt *pro hac vice*
Paul.Gwilt@kutakrock.com
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
Telephone: (402) 346-6000
Facsimile: (402) 346-1148

Attorneys for Defendant

ARIAS OZZELLO & GIGNAC LLP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

JOE DOUGLAS, on behalf of himself and on behalf of all others similarly situated,

Plaintiff,

vs.

TALK AMERICA INC., a Pennsylvania corporation, and DOES 1 through 10, inclusive,

Defendants.

Case No.: CV 06-3809 GAF(RCx)

**CLASS ACTION**

Honorable Gary Allen Feess

**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S RESPONSE TO PLAINTIFF'S INTERROGATORIES SET TWO**

Date: February 17, 2010
Time: 9:30 a.m.
Courtroom: Magistrate Judge Rosalyn M. Chapman
Trial Date: None Set
Discovery Cut-off Date: None Set
Pretrial conference Date: None Set

ARIAS OZZELLO & GIGNAC LLP

## Table of Contents

I. VERBATIM STATEMENT OF DISPUTED DISCOVERY AND RESPONSE ........ 1

II. JOINT STATEMENT OF ISSUES IN DISPUTE ........ 6

III. STATEMENT OF PLAINTIFF'S POSITION ........ 7

A. Plaintiff's Introductory Statement ........ 7

B. Factual Background ........ 10

**1. Basis of the Litigation ........ 10**

**2. Litigation History ........ 10**

**3. Motion for Class Certification and Rule 23(f) Petition ........ 11**

**4. Motion to Amend ........ 13**

**5. Discovery At Issue ........ 15**

C. Plaintiff's Statements of Contentions, Points and Authorities ........ 15

**1. The Information Sought Is Relevant ........ 18**

**2. The Information Sought Is Not Unduly Burdensome. ........ 19**

**3. The Privacy Interests of the Class Members Are Protected. ........ 20**

**4. The Information Sought Will Not Affect Defendant's Confidential Customer Proprietary Network Information ("CPNI") ........ 22**

**5. The Discovery Sought Does Not Fail to Comply With The Privacy Protections Established in Cal.Civ.Proc. Code §1985.3(f) or Cal.Pub.Util. Code §2891 ........ 23**

**6. The Proposed Notice Of Right To Object Is Appropriate ........ 24**

IV. STATEMENT OF DEFENDANT'S POSITION ........ 25

A. Introduction ........ 25

B. Statement of Facts ........ 27

C. Statement of Issues In Dispute ........ **Error! Bookmark not defined.**

D. Defendant's Statements of Contentions, Points and Authorities ........ 29

**1. The Discovery Sought by Plaintiff is Irrelevant to This Action ........ 29**

**2. Plaintiff's Proposed Discovery Violates Talk America's Right to Privacy. ........ 34**

        **3. Plaintiff's Proposed Notice to Talk America's Customers Fails to Comply With Federal and State Law ........ 36**

**4. Plaintiff's Proposed Discovery Places an Undue Burden on Talk America. ........ 37**

IV. CONCLUSION ........ 39

A. Plaintiff's Conclusion ........ 39

B. Defendant's Conclusion ........ 39

ARIAS OZZELLO & GIGNAC LLP

Pursuant to Local Rule 37-2, plaintiff Joe Douglas ("Plaintiff"), as movant, and defendant Talk America Inc. ("Defendant"), as respondent, respectfully submit the following Joint Stipulation regarding Plaintiff's Interrogatories, Set Two. In accordance with Local Rule 37-1, the parties have met and conferred telephonically in good faith to resolve this dispute but were unable to do so. The parties now seek the court's assistance in resolving their dispute.

## I. VERBATIM STATEMENT OF DISPUTED DISCOVERY AND RESPONSE

***INTERROGATORY NO. 13:***

*IDENTIFY 200 residents of the State of California who contracted directly with TALK AMERICA for the provision of long distance telephone service and, at any time during the period of time commencing on May 1, 2004 and concluding on February 28, 2007, were charged and paid the Inter-LATA Direct Dial Fee. (As used in this interrogatory, "IDENTIFY" means to state the name and the last known residential address, and e-mail address of each such person.)*

***DEFENDANT'S RESPONSE TO INTERROGATORY NO 13:***

Talk America incorporates its General Objections in response to this Interrogatory.

Talk America specifically objects to this Interrogatory because it violates Talk America's customers' right to privacy under Article 1, Section 1 of Constitution of the State of California. Talk America further objects to this Interrogatory because the information sought by Plaintiff is confidential customer proprietary network information ("CPNI") which is protected from disclosure under 47 U.S.C. § 222(c)(1) & 222(h)(1) and 47 C.F.R. § 64.2001-64.2011. Talk America further objects to this Interrogatory because it fails to comply with the privacy protections established in CAL. CIV. PROC. CODE § 1985.3(f) and CAL. PUB. UTIL. CODE § 2891.

Talk America further objects to this Interrogatory for the reason it is overly broad and Plaintiff provides no explanation or justification as to why it is entitled to the

ARIAS OZZELLO & GIGNAC LLP

confidential and private information of an arbitrary number (200) of Talk America customers who reside in California. Talk America further specifically objects to this Interrogatory because it is unduly burdensome in that it purports to require Talk America to investigate the payment history of its customers and their residency (as opposed to a customer's billing address).

Talk America further specifically objects to this Interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence and is not otherwise relevant to the above-captioned action. Pursuant to this Court's orders in Filing Nos. 76 & 95, this action concerns only Plaintiff's individual claims against Talk America, and accordingly the identity of any additional Talk America customers is no longer relevant to this action in which no class was certified and therefore never achieved a separate legal status apart from Plaintiff's individual claims. This interrogatory merely seeks to circumvent this Court's repeated rulings that Plaintiff's proposed class is not appropriate for class certification under Rule 23 of the Federal Rules of Civil Procedure.

Finally, Talk America specifically objects to the use of its customer records in the solicitation of prospective clients in violation of Rule 1-400 of the California Rules of Professional Conduct or Cal. Bus. & Prof. Code § 6157-6159.2.

***INTERROGATORY NO. 14:***

*IDENTIFY 200 residents of the State of California who contracted directly with TALK AMERICA for the provision of long distance telephone service and, at any time during the period of time commencing on April 1, 2003 and concluding on February 28, 2007, were charged and paid the TSR Administration Fee. (As used in this interrogatory, "IDENTIFY" means to state the name and the last known residential address, and e-mail address of each such person.)*

***DEFENDANT'S RESPONSE TO INTERROGATORY NO 14:***

Talk America incorporates its General Objections in response to this Interrogatory.

Talk America specifically objects to this Interrogatory because it violates Talk America's customers' right to privacy under Article 1, Section 1 of Constitution of the State of California. Talk America further objects to this Interrogatory because the information sought by Plaintiff is CPNI which is protected from disclosure under 47 U.S.C. § 222(c)(1) & 222(h)(1) and 47 C.F.R. § 64.2001-64.2011. Talk America further objects to this Interrogatory because it fails to comply with the privacy protections established in CAL. CIV. PROC. CODE § 1985.3(f) and CAL. PUB. UTIL. CODE § 2891.

Talk America further objects to this Interrogatory as overly broad because Plaintiff provides no explanation or justification as to why it is entitled to the confidential and private information of an arbitrary number (200) of Talk America customers who reside in California. Talk America further specifically objects to this Interrogatory because it is unduly burdensome in that it purports to require Talk America to investigate the payment history of its customers and their residency (as opposed to a customer's billing address).

Talk America further specifically objects to this Interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence and is not otherwise relevant to the above-captioned action. Pursuant to this Court's orders in Filing Nos. 76 & 95, this action concerns only Plaintiff's individual claims against Talk America, and accordingly the identity of any additional Talk America customers is no longer relevant to this action in which no class was certified and therefore never achieved a separate legal status apart from Plaintiff's individual claims. This Interrogatory merely seeks to circumvent this Court's repeated rulings that Plaintiff's proposed class is not appropriate for class certification under Rule 23 of the Federal Rules of Civil Procedure.

Finally, Talk America specifically objects to the use of its customer records in the solicitation of prospective clients in violation of Rule 1-400 of the California Rules of Professional Conduct or Cal. Bus. & Prof. Code § 6157-6159.2.

***INTERROGATORY NO. 15:***

*For each customer complaint made to TALK AMERICA between May 1, 2004 and February 28, 2007 by a California resident which refers, references or relates to the Inter-LATA Direct Dial Fee, please state the name and the last known residential address, and e-mail address of the customer making the complaint.*

***DEFENDANT'S RESPONSE TO INTERROGATORY NO 15:***

Talk America incorporates its General Objections in response to this Interrogatory.

Talk America specifically objects to this Interrogatory because it violates Talk America's customers' right to privacy under Article 1, Section 1 of Constitution of the State of California. Talk America further objects to this Interrogatory because the information sought by Plaintiff is CPNI which is protected from disclosure under 47 U.S.C. § 222(c)(1) & 222(h)(1) and 47 C.F.R. § 64.2001-64.2011. Talk America further objects to this Interrogatory because it fails to comply with the privacy protections established in CAL. CIV. PROC. CODE § 1985.3(f) and CAL. PUB. UTIL. CODE § 2891.

Talk America further objects to this Interrogatory because it is overly broad and unduly burdensome because it purports to require Talk America to review records associated with hundreds of thousands of customer accounts to determine whether a customer submitted a complaint and then analyze the substance of any such complaint. Talk America further specifically objects to this Interrogatory because the undefined terms "customer complaint" and "refers, references, or relates to" are vague and ambiguous in this context.

Talk America further specifically objects to this Interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence and is not otherwise relevant to the above-captioned action. Pursuant to this Court's orders in Filing Nos. 76 & 95, this action concerns only Plaintiff's individual claims against Talk America, and accordingly the identity of any additional Talk America customers is no

ARIAS OZZELLO & GIGNAC LLP

longer relevant to this action in which no class was certified and therefore never achieved a separate legal status apart from Plaintiff's individual claims. Talk America denies that customer complaints by Talk America' customers other than Plaintiff are relevant to this action, but to the extent any such complaints could somehow be deemed relevant, Plaintiff has failed to demonstrate why the identity of a complaining customer is relevant. This Interrogatory merely seeks to circumvent this Court's repeated rulings that Plaintiff's proposed class is not appropriate for class certification under Rule 23 of the Federal Rules of Civil Procedure.

Finally, Talk America specifically objects to the use of its customer records in the solicitation of prospective clients in violation of Rule 1-400 of the California Rules of Professional Conduct or CAL. BUS. & PROF. CODE § 6157-6159.2.

***INTERROGATORY NO. 16:***

*For each customer complaint made to TALK AMERICA between April 1, 2003 and February 28, 2007 by a California resident, which refers, references or relates to the TSR Administration Fee, please state the name and the last known residential address, and e-mail address of the customer making the complaint.*

***DEFENDANT'S RESPONSE TO INTERROGATORY NO 16:***

Talk America incorporates its General Objections in response to this Interrogatory.

Talk America specifically objects to this Interrogatory because it violates Talk America's customers' right to privacy under Article 1, Section 1 of Constitution of the State of California. Talk America further objects to this Interrogatory because the information sought by Plaintiff is CPNI which is protected from disclosure under 47 U.S.C. § 222(c)(1) & 222(h)(1) and 47 C.F.R. § 64.2001-64.2011. Talk America further objects to this Interrogatory because it fails to comply with the privacy protections established in CAL. CIV. PROC. CODE § 1985.3(f) and CAL. PUB. UTIL. CODE § 2891.

Talk America specifically objects to this Interrogatory because it is overly broad

ARIAS OZZELLO & GIGNAC LLP

and unduly burdensome because it purports to require Talk America to review records associated with hundreds of thousands of customer accounts to determine whether a customer submitted a complaint and then analyze the substance of any such complaint. Talk America further specifically objects to this Interrogatory because the undefined terms "customer complaint" and "refers, references, or relates to" are vague and ambiguous in this context.

Talk America further specifically objects to this Interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence and is not otherwise relevant to the above-captioned action. Pursuant to this Court's orders in Filing Nos. 76 & 95, this action concerns only Plaintiff's individual claims against Talk America, and accordingly the identity of any additional Talk America customers is no longer relevant to this action in which no class was certified and therefore never achieved a separate legal status apart from Plaintiff's individual claims. Talk America denies that customer complaints by Talk America' customers other than Plaintiff are relevant to this action, but to the extent any such complaints could somehow be deemed relevant, Plaintiff has failed to demonstrate why the identity of a complaining customer is relevant. This Interrogatory merely seeks to circumvent this Court's repeated rulings that Plaintiff's proposed class is not appropriate for class certification under Rule 23 of the Federal Rules of Civil Procedure.

Finally, Talk America specifically objects to the use of its customer records in the solicitation of prospective clients in violation of Rule 1-400 of the California Rules of Professional Conduct or CAL. BUS. & PROF. CODE § 6157-6159.2.

## II. JOINT STATEMENT OF ISSUES IN DISPUTE

1. Whether the names and contact information of putative class members who are residents of the State of California constitute relevant discovery.

2. Whether requiring Defendant to search its records, identify and provide the contact information for each California resident customer who made a complaint

to Defendant between May 1, 2004 and February 28, 2007 regarding the Inter-lata Direct Dial Fee and/or the TSR Administration Fee is unduly burdensome.

3. Whether Plaintiff's requested discovery violates the privacy interests of the class members such that denial of discovery is merited.

4. Whether Plaintiff's requested discovery infringes upon Defendant's right to protect its Customer Proprietary Network Information.

5. Whether the proposed Notice of Right to Object provides a sufficient mechanism to protect the privacy interests of the identified class members.

## III. STATEMENT OF PLAINTIFF'S POSITION

### A. Plaintiff's Introductory Statement

In this class action lawsuit against Defendant, Plaintiff alleges violations of California consumer protection statutes, federal communications law, and common law arising from Defendant's unfair, undisclosed and deceptive billing practices. Although Plaintiff is a member of the class he seeks to represent, the district court has found that he is atypical and/or inadequate to serve as the class representative. Given the district court's ruling as to the suitability of Plaintiff as a class representative, Defendant will escape liability for its improper and inadequate disclosure of these "incomprehensible" fees unless one or more class members steps forward to represent the class. (*See* Transcript of Hearing on Motion for Class Certification at 24:1-4 (Filing No. 77) attached as an exhibit to the Declaration of Kiley Lynn Grombacher ("Grombacher Decl.") ¶5; wherein the district court recognized that the TSR Administration Fee and the Inter-lata Direct Dial Fee are "incomprehensible".) Accordingly, Plaintiff now seeks to locate one or more class members who may be willing and suitable representatives for the class.

This Motion to Compel arises from Defendant's refusal to produce information responsive to Plaintiff's narrowly tailored interrogatories which seek basic contact information necessary to identify a substitute class representative. Answers to the

interrogatories propounded by Plaintiff are the first step in securing the participation of one or more class members as the class representative(s). Plaintiff has brought the present litigation as a class action, and the district court has acknowledged that many of the Rule 23 requirements for class certification have been met. Since decisions regarding class certification are inherently tentative and since Plaintiff is free to bring a renewed motion for class certification, there should be no question that Plaintiff is entitled to communicate with class members for the purpose of identifying other individuals who may serve as the class representative(s) in order to protect and serve the interest of the class. Accordingly, for the reasons set forth above and detailed below, Plaintiff respectfully requests that this Court compel Defendant to provide answers to Plaintiff's Interrogatories Set Two comprised of interrogatory numbers 13, 14, 15, and 16.

Further, in order to protect the privacy interests of the members of the class, Plaintiff proposes that the class members identified in response to these interrogatories be provided with notice of the proposed disclosure of their contact information and an opportunity to object thereto. As such, Plaintiff requests that this Court approve Plaintiff's Notice of Right to Object [1]. This notice has been carefully drafted to inform the identified class members of proposed disclosure of their contact information and to provide them with a full and fair opportunity object to such disclosure. Specifically, Plaintiff's Notice of Right to Object will:

(1) Provide a brief description of the action and the parties involved;

(2) Describe the procedural history of the litigation, including an explanation of the Court's orders/rulings dated March 10, 2009 (order denying class certification), and September 3, 2009 (ruling denying Plaintiff's motion to amend) (Filing Nos. 76 & 96); and

(3) Provide a statement describing the contact information sought and

[1] A copy of Plaintiff's Proposed Notice Of Right To Object To Disclosure Of Contact Information ("Notice of Right to Object") is attached hereto as Exhibit A .

ARIAS OZZELLO & GIGNAC LLP

the manner in which to opt-out of such disclosure. [Notice of Right to Object, Exhibit A]

Plaintiff intends to employ a third party to administer the process of distributing the Notice of Right to Object and receiving all responses by class members. Therefore, in order to secure the class members' privacy rights, Plaintiff requests that the Court order Defendant to provide the contact information of the class members identified in response to Plaintiff's interrogatories directly to the third party Contact Information Administrator, that the contact information be subject to the Protective Order (Filing No. 69) issued by the Court in this action, and that the Contact Information Administrator sign off on the Protective Order.

Plaintiff proposes the following discovery response schedule:

| Proposed Deadline | Proposed Action |
|---|---|
| 30 days from issuance of Order Compelling Defendant to Respond to Discovery | Defendant provides the contact information of the class members identified in response to Plaintiff's interrogatories to the Contact Information Administrator |
| 10 days from receipt of identified class member contact information | Contact Information Administrator to mail the Notice of Right to Object to the identified class members |
| 40 days from date Contact Information Administrator receives identified class member contact information | Class Members to notify the Contact Information Administrator of objections to disclosure by mail or fax |
| 7 days from Deadline for class members to mail/fax objections | Contact Information Administrator provides contact information to Plaintiff for all class members who do not object |

ARIAS OZZELLO & GIGNAC LLP

Any class member that affirmatively objects in the manner detailed in the Notice of Right to Object will not have his/her contact information divulged to Plaintiff's counsel. This procedure is intended to provide the utmost protection to the privacy interests of the class members in their contact information. Accordingly, for this reason, and the reasons set forth below, Plaintiff requests that this Court approve the Notice of Right to Object and Plaintiff's proposed interrogatory response schedule.

### B. Factual Background

#### 1. Basis of the Litigation

Plaintiff, a former residential telephone customer of Defendant, challenges Defendant's assessment of three monthly surcharges -- (1) an "Inter-lata Direct Dial Fee" in the amount of a $6.95, (2) a "Monthly Billing Fee" in the amount of $5.95 and (3) a "TSR Administration Fee" in the amount of $9.95-- on the grounds that these charges were improperly classified and/or inadequately disclosed. Defendant's Consumer Service Agreement ("CSA") wholly failed to disclose that Defendant would charge an "Inter-lata Direct Dial Fee" of $6.95 or a "Monthly Billing Fee" of $5.95. Defendant's disclosure of the "TSR Administration Fee" was similarly deficient; it was limited to the definition in the "Glossary of Taxes and Fees" set forth on Plaintiff's telephone bill as a "fee that reimburses the company for administration costs incurred to collect federal, state, and local taxes, surcharges, and regulatory fees." This definition did not adequately inform Plaintiff that Defendant would charge Plaintiff a flat administration fee that is not reasonably related to the actual monthly costs that the company incurs per customer. On Plaintiff's August 17, 2005 bill, these fees totaled more than 67 times the charges for the long distance calls that Plaintiff actually made. Plaintiff timely paid all of his monthly bills and seeks redress on behalf of himself and other Talk America customers who are similarly situated.

#### 2. Litigation History

Plaintiff filed his original complaint on June 16, 2006. (Grombacher Decl. ¶4.) Plaintiff subsequently amended his complaint on August 14, 2006. (Grombacher Decl. ¶4.) Shortly thereafter, Defendant moved to compel individual arbitration of Plaintiff's claims and to stay proceedings in the district court based upon a class action waiver and arbitration clause contained in the terms and conditions of the adhesive CSA that it posted on its website. Although the district court granted Defendant's Motion to Compel (Filing No. 13) arbitration, the Ninth Circuit Court of Appeals overturned the district court's order. The Ninth Circuit held that the CSA was not enforceable against Plaintiff to the extent that it sought to bind Plaintiff to any new or different terms not included in his original contract with AOL because Plaintiff was not notified of the new terms. *Douglas v. U.S. Dist. Court for Cent. Dist. of California* , 495 F.3d 1062, 1067 (9th Cir. 2007). Further, the Ninth Circuit determined that the class action waiver in the CSA was both procedurally and substantively unconscionable under California law. *Id.* at 1068. While not directly ruling on the issue, the Ninth Circuit strongly intimated that the terms of Defendant's CSA "probably would not be enforceable in California because they would conflict with California's fundamental policy as to unconscionable contracts." *Id.* at 1067.

### 3. Motion for Class Certification and Rule 23(f) Petition

After completing limited discovery, Plaintiff filed a Motion for Class Certification on October 1, 2008. (Grombacher Decl. ¶5.) In his motion, Plaintiff sought to represent two classes. The first, a nationwide class, was defined as:

> all residents of the United States of America who: (a) were telephone service customers of Talk America on or after June 16, 2004, (b) who at any time between June 16, 2004 and the date of the Class Certification Order in this action have been charged by Talk America for an Inter-LATA Direct Dial Fee, a Monthly Billing Fee, and/or a TSR Administration Fee, and (c) who paid Talk America for one of more of these fees. (Plaintiff's Notice of Motion for Class Certification (Filing No. 66) at 1.)

ARIAS OZZELLO & GIGNAC LLP

Plaintiff also sought to represent a California subclass defined as:

> all residents of the State of California who: (a) were telephone service customers of Talk America on or after June 16, 2002, (b) who at any time between June 16, 2002 and the date of the Class Certification Order in this action have been charged by Talk America for an Inter-LATA Direct Dial Fee, a Monthly Billing Fee, and/or a TSR Administration Fee, and (c) who paid Talk America for one of more of these fees. (Plaintiff's Notice of Motion for Class Certification at 1.)

During oral argument on Plaintiff's Motion for Class Certification, the district court expressed the view that class certification may be appropriate if the claims were limited to the Inter-LATA Direct Dial Fee and the TSR Administration Fee:

> My question is this: Assuming for purposes of discussion that you're right about the monthly billing fee and the use of that fee as a means of obtaining a nickel a minute rate, and even if I agreed with you, we could still have a class on the Inter-LATA fee and the TSR administration fee, couldn't we? (Transcript of Hearing on Motion for Class Certification at 22:2-7.)

As the Court accurately noted, even accepting Talk America's arguments as to why certification of claims based upon the monthly billing fee should be denied, "I don't see – but I'm saying even if I accept that argument as to that [monthly billing] fee, I don't see how it encapsulates or encompasses the other two fees -- ... -- which are incomprehensible." (*Id.* at 23:25-24:4.) Nevertheless, in the end, after taking the motion under submission, the district court issued an order denying certification of both the nationwide class and California subclass, determining, *inter alia*, that:

(1) Plaintiff, a former customer of AOL, was unlike many of Talk America's customers who signed up directly with Talk America for its internet-based long distance service, in that Plaintiff was not "bound by the terms and conditions of Talk America's Consumer Service Agreement ("CSA")". Accordingly, the district court found that Plaintiff "cannot represent either the national class or the California class to the extent

that class members' claims are contract based." (Class Certification Order ("CCO") at 2-3.)

(2) Plaintiff "failed to show that his attack on the [monthly billing] fee is typical of claims by other members of the California and national classes." (CCO at 3:19-21.)

(3) With respect to the national class, "the enforceability of the arbitration clause and the class action limitation clause are issues that will have to be determined under the laws of the state of the class member's domicile." (CCO at 3.)[2]

(4) Plaintiff "has a conflict of interest with respect to his relationship with proposed class counsel David Greifinger." (CCO at 15.)

Plaintiff sought review of the District Court's Order denying class certification by filing a Rule 23(f) Petition for Permission to Appeal. However, the Ninth Circuit Court of Appeals declined Plaintiff's Petition on May 28, 2009.

**4. Motion to Amend**

In light of the district court's March 10, 2009, Order Denying Plaintiff's Motion for Class Certification and the Ninth Circuit's denial of Plaintiff's Fed.R.Civ.P. 23(f) Petition seeking permission to appeal the CCO, Plaintiff sought leave to amend his complaint in order to seek certification of two different classes (as defined in the [Proposed] Second Amended Complaint) that were significantly more limited in scope than the two classes for which Plaintiff previously sought certification in this action[3].

[2] In its Order, the district court expressly acknowledged the Ninth Circuit's finding that the arbitration clause is not enforceable in this Circuit. (CCO at 3.)

[3] Specifically, the two classes that Plaintiff sought to represent, as defined in paragraph 24 of the [Proposed] Second Amended Complaint, were:

> The "IDD Fee Class" includes all residents of the State of California who, at any time during the period of time commencing on May 1, 2004 and concluding on February 28, 2007, were charged and have paid the Inter-LATA Direct Dial Fee.
>
> The "TSR Fee Class" includes all residents of the State of California who, at any time during the period of time commencing on April 1, 2003 and concluding on February 28, 2007, were charged and have paid the TSR Administration Fee.

The [Proposed] Second Amended Complaint was intended to address and rectify each of the obstacles to class certification that the Court identified in its CCO. Specifically:

(a) all contract-based claims were eliminated from the [Proposed] Second Amended Complaint, and a claim for unjust enrichment was added to the [Proposed] Second Amended Complaint;

(b) all claims and allegations related to the Monthly Billing Fee were eliminated from the [Proposed] Second Amended Complaint;

(c) the nationwide class was eliminated from the [Proposed] Second Amended Complaint, and two differently defined, California resident only classes were alleged in the [Proposed] Second Amended Complaint; and

(d) David Greifinger withdrew as one of the counsel for Plaintiff.[4]

Because Plaintiff's motion for leave to amend was brought in anticipation of bringing a renewed motion for class certification, in deciding whether to grant Plaintiff's Motion to Amend the district court identified the determinative issue to be whether, "in view of the Ninth Circuit's determination that Douglas is not bound by the agreement with Talk America, Douglas can properly represent a class of plaintiffs." (Order on Motion to Amend ("OMA") at 4). The district court found that:

> While the remainder of the class will face a threshold issue about whether the CSA prevents them from bringing their claims in federal court, Douglas himself cannot even raise these issues because he is not a party to the agreement between Talk America and many members of the class. (OMA at 4-5)

As a result, the district court denied Plaintiff's motion to amend finding that, because Plaintiff was an inadequate class representative, the proposed amendment was futile. (OMA at 5).

---

([Proposed] Second Amended Complaint, ¶24.)

[4] Plaintiff filed a Notice of Withdrawal of Counsel David Greifinger concurrently with his Motion to Amend.

ARIAS OZZELLO & GIGNAC LLP

**5. Discovery At Issue**

Given the district court's rulings as to the suitability of Plaintiff as a class representative, it was incumbent upon Plaintiff to identify other individuals who may serve as class representative(s). Accordingly, on October 2, 2009, Plaintiff propounded upon Defendant four narrowly tailored interrogatories specifically directed at identifying individuals capable of satisfying the typicality and adequacy requirements under Rule 23. (Grombacher Decl. at ¶10.) Defendant served formal objections to these interrogatories asserting, *inter alia*, that the information sought is not relevant given the district court's denial of Plaintiff's motion for class certification. Given Defendant's position and the inability of the parties to resolve the dispute through their good faith efforts to meet and confer, Plaintiff seeks an order from this Court compelling Defendant's answers to these four interrogatories and establishing a procedure for the disclosure of the information sought thereby that protects the privacy interests of the class members.

**C. Plaintiff's Statements of Contentions, Points and Authorities**

California law is clear: "a class representative who is not a class member or is otherwise unqualified to serve as class representative may, in a proper case, move for precertification discovery for the purpose of identifying a new class representative." *Safeco Insurance Company of America v. Super.Ct,,* 173 Cal.App.4th 814, 828 (Cal.Ct.App.2009); *see also Parris v. Super.Ct,,* 109 Cal.App.4th 285, 300-301 (Cal.Ct.App.2003). California's policy is necessitated by the fact that "the class action device is a creature of equity" and as such, "must be kept sufficiently flexible to meet such unconceivable situations as the ingenuity of man or the vagaries of circumstances might create." *Edgerton v. Armour & Co.*,94 F.Supp. 549, 554 (S.D. Cal. 1950) citing *Hansberry v. Lee*, 311 U.S. 32, 41 (1940).

In *Best Buy Stores, L.P. v. Superior Court*, the California Court of Appeal held that "[I]f discovery is necessary in order to afford a named plaintiff an opportunity to add new individual plaintiffs who adequately represent the class, it should be made

ARIAS OZZELLO & GIGNAC LLP

available." *Best Buy Stores, L.P. v. Super.Ct.*, 137 Cal.App.4th 772, 779 (Cal.Ct.App. 2006) citing *Budget Finance Plan v. Super.Ct.*, 34 Cal.App.3d 794, 799 (Cal.Ct.App. 1973). Likewise, in *Pioneer Electronics (USA), Inc. v. Super.Ct.*, the Court of Appeal held that "contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case." *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 373 (2007).

In this case, discovery is proper because the interests of the parties outweigh the potential for abuse. *Parris, supra*, 109 Cal.App.4th at 300-301. The discovery sought is essential to the identification of a substitute class representative. Without an adequate class representative, the action cannot proceed as a class action, leaving a myriad of class members utterly without redress for their injury. Due to the relatively small monetary damages suffered by each individual class member, a class action is the only feasible means by which the injured consumers can hope to obtain a cost-effective remedy. As the court explained in *duPont Glore Forgan, Inc. v. American Telephone and Telegraph Co.*, 69 F.R.D. 481 (S.D.N.Y. 1975):

> [T]he time-cost factor of legal fees in view of the vigor of defendants' opposition make it uneconomical to proceed with the suit on an individual basis even assuming an ultimate recovery ... Thus, the assertion that this action will not go forward at all if class action status is denied is plausible. The hard fact is that economic reality indicates the likelihood that unless this action is permitted to proceed as a class suit, it is the end of this litigation. *Id.* at 487.

As in *duPont*, in the absence of class certification, it is virtually certain that none of the other class members' individual claims will go forward.

Further, assuming *arguendo* that bringing a private action was feasible, because the charges at issue were assessed several years prior, a vast number of class members may be without judicial recourse as they may be time barred from litigating their claims and/or may not have maintained billing records sufficient to determine whether they have a claim.

ARIAS OZZELLO & GIGNAC LLP

The district court has recognized that Plaintiff has made a strong offer of proof that the at-issue charges were improperly disclosed. (Transcript of Hearing on Motion for Class Certification at 24:1-4, wherein the district court found that the TSR Administration fee and the Inter-lata Direct Dial Fee were "incomprehensible"). Yet, the practical effect of the district court's rulings is that Talk America can continue to reap the rewards of its unfair, deceptive and misleading business practices without fully accounting to all of its customers for its wrongdoing unless a suitable representative steps forward to shoulder the burden of representing the class.

While the interest of the class members is great, the potential for abuse is *de minimus*. Plaintiff has carefully drafted the four interrogatories propounded upon Defendant so that each interrogatory is narrowly tailored and does not impose an undue burden upon Defendant. Additionally, the Notice of Right to Object has been prepared and will be distributed in a manner intended to safeguard the privacy interest of the class members.

California courts have found the potential for abuse to overcome the interests of the parties only where the party requesting precertification discovery has no interest of its own in this litigation. *See First American Title Insurance Company v. Superior Court*, 146 Cal.App.4th 1564, 1557 (Cal.Ct.App. 2007); *see also Cryoport Systems v. CAN Ins. Cos.*, 149 Cal.App.4th 627, 634 (Cal.Ct.App.2007). However, such circumstances simply do not exist in the present case. While, at least according to the district court, Plaintiff may not have standing to challenge the "threshold" arbitration issue which may affect some undetermined portion of the class,[5] he is still a class member and has a vested interest in the litigation. Further, there has been no undue

[5] This absence of standing exists, according to the district court, despite the fact that Defendant sought to enforce the arbitration clause against Plaintiff and despite the fact that, under the law in both California and in the Ninth Circuit, Defendant's arbitration clause plainly will be unenforceable as to any resident of the State of California. *See generally Discover Bank v. Super. Ct.*, 36 Cal.4th 148 (2005); *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007).

ARIAS OZZELLO & GIGNAC LLP

delay on the part of Plaintiff that may prejudice Defendant. Plaintiff propounded the at-issue discovery promptly after the district court's denial of Plaintiff's Motion to Amend.

**1. The Information Sought Is Relevant**

Fed.R.Civ.P. 26 provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including… the identity and location of persons who know of any discoverable matter." Rule 26(b)(1); *see also Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 29-30 (1984). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1). Additionally, "for good cause," the court may permit discovery of information "relevant to the subject matter involved in the action." FRCP 26(b)(1). "Relevant to the subject matter" is interpreted broadly. Information is "relevant to the subject matter" if it might reasonably assist a party in *evaluating* the case, preparing for trial or facilitating settlement thereof. *See Hickman v. Taylor* 329 U.S. 495, 506–507 (1947). Moreover, all discovery in federal district court is subject to Rule 1, which directs that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." Rule 1; *DIRECTV, Inc. v. Trone,* 209 F.R.D. 455, 458 (C.D.Cal. 2002).

In federal court, unlike in state court, the denial of class certification does not necessarily "sound the 'death knell'" of the litigation. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469-470 (1978). Rather, under Rule 23, an order denying class certification is not appealable in part because it may be "altered or amended before the decision on the merits," and it therefore, "inherently tentative". *Id* at 469 n. 11. Thus, plaintiffs in federal court routinely are granted opportunities to amend their complaints and file renewed motions for class certification that eliminate the deficiencies identified in a previous denial of class certification. *See i.e. Poulos v. Caesar's World*, 379 F.3d. 654, 659 (9th Cir. 2004) (plaintiffs filed a second amended complaint followed by a renewed motion for class certification); *O'Connor v. Boeing*, 184 F.R.D. 311, 316 (C.D.

Cal. 1988) (plaintiffs granted leave to file Fourth Amended Complaint in advance of filing a renewed motion for class certification).[6] The practical effect of this well-established precedent is that a district court's denial of class certification does not extinguish the possibility that the action may be litigated as a class action. Effectively, therefore, a precertification state court plaintiff is in the same position as a federal court plaintiff whose motion for class certification has been denied.

Since Plaintiff's case can still be maintained as a class action, information regarding class members is clearly relevant. Therefore, Plaintiff has satisfied his burden under Rule 26, and Defendant should be compelled to provide answers to Plaintiff's Interrogatories Set Two.

**2. The Information Sought Is Not Unduly Burdensome.**

Courts must weigh the burden or expense of proposed discovery against its likely benefit, taking into account "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. Proc. 26(b)(2). Here, the importance of the proposed discovery outweighs the alleged burden and expense upon Defendant. First, any alleged burden Defendant will suffer is directly attributable to its own actions. Defendant admittedly fails to retain customer complaints or inquiries received via letter after the initial response to the customer. Such records could easily be produced with minimal expense to Defendant. Defendant's failure to retain such records certainly should not be held against the Plaintiff.

Plaintiff has carefully drafted the four interrogatories propounded upon Defendant so that each is narrowly tailored. Although Defendant maintains that it would be

---

[6] Likewise, the district courts in the Ninth Circuit have freely permitted – and sometimes even ordered -- plaintiffs to file renewed or alternative motions for class certification. See, *e.g.*, *O'Connor*, 184 F.R.D. at 316( ordering plaintiffs to file a renewed motion for class certification); *Andrews Farms v. Calcot Ltd.*, 2009 WL 1211374 (E.D. Cal. May 1, 2009) at *12 (denying motion for class certification, but ordering plaintiff to file a renewed motion for class certification with a proposal to overcome a Rule 23(a) conflict); *Kelley v. Microsoft Corporation*, 2009 WL 973368 (W.D. Wash. April 10, 2009) at *4 (permitting motion for narrowed class certification after previously granting motion to decertify the class).

ARIAS OZZELLO & GIGNAC LLP

burdensome to review the records associated with its California resident customers, this assertion is unsubstantiated. It is likely that many of these customers would not have been sufficiently motivated to log a complaint with Defendant. As such, there would likely be no entry in the general note section for Defendant to review. Defendant simply has not shown that there are such a vast number of complaints that review of the General Notes would be burdensome.

While the burden to Defendant is *de minimus*, the importance of the discovery is great. As shown above, the discovery sought is essential to the identification of a substitute class representative. As such, production of the requested information should be compelled..[7]

**3. The Privacy Interests of the Class Members Are Protected.**

Defendant objects that the information sought by Plaintiff's interrogatories violates the class members' right to privacy. This objection fails for several reasons. First, no invasion of privacy will ensue if this Court grants Plaintiff's motion. As the California Supreme Court found in *Pioneer*, the proposed disclosure is not particularly sensitive if it involves disclosing "neither one's personal medical history or current medical condition nor details regarding one's personal finances or other financial information". *Pioneer Electronics (USA), supra,* 40 Cal.4th at 372. In fact, as to interrogatory numbers fifteen and sixteen which request the contact information for customers who had registered complaints with Talk America, the interrogatories seek contact information previously "voluntarily disclosed" to Defendant. *Id* at 372. The *Pioneer* court found that such customers had a reduced expectation of privacy. Specifically, the California Supreme Court reasoned:

[7] Defendant has further objected on the grounds Plaintiff's interrogatories are unduly burdensome in that they purports to "require Talk America to investigate the payment history of its customers and their residency (as opposed to a customer's billing address)". In an effort to compromise, Plaintiff is amenable to accepting the billing addresses of the identified class members in lieu of the residential address.

ARIAS OZZELLO & GIGNAC LLP

> … it seems unlikely that these customers, having already voluntarily disclosed their identifying information to that company in the hope of obtaining some form of relief, would have a reasonable expectation that such information would be kept private and withheld from a class action plaintiff who possibly seeks similar relief for other Pioneer customers, *unless the customer expressly consented to such disclosure.* If anything, these complainants might reasonably expect, and even hope, that their names and addresses would be given to any such class action plaintiff.

*Pioneer, supra,* 40 Cal.4th at 372.

Second, in order to protect the privacy interests of the class members, Plaintiff intends to utilize several safeguards. Plaintiff proposes to structure his notice to the class members in a manner similar to that used in *Pioneer.* In *Pioneer*, each affected Pioneer customer was given notice of the proposed disclosure and an opportunity to object thereto prior to dissemination of his/her contact information. *Id.* at 372. Similarly, Plaintiff proposes a comparable notice which: (1) informs the identified class members that contact information is being sought; (2) provides background information regarding the litigation; (3) provides information on the manner in which the class member can object to disclosure; and (4) provides a reasonable deadline for the objection to be submitted.

Third, while Plaintiff has requested that Defendant identify 200 California resident class members who were charged and paid for the TSR Administration Fee and/or the Inter-lata Direct Dial Fee, Plaintiff intends to contact the class members in four phases by groups of fifty in the hope of locating a suitable class representative without the need to contact all 200 class members identified by Defendant. In addition, prior to contacting any of the 200 identified class members, Plaintiff intends to first contact those class members who lodged a complaint with Talk America under the assumption that those class members who took the time to complain likely would be more motivated to serve as a class representative. (Grombacher Decl. ¶15)

Fourth, Plaintiff intends to contact the class members in a minimally invasive manner. Plaintiff proposes to send correspondence from his counsel to the class members by U.S. mail and/or email only and will comply with all applicable rules of professional conduct. Thereafter, Plaintiff's counsel will only discuss the litigation telephonically or otherwise with class members who initiate contact with Plaintiff's counsel. (Grombacher Decl.¶16)

Fifth, the Protective Order signed by this Court on October 20, 2008 will further serve to protect the privacy interests of the identified class members. The district court in *Wiegele v. Fedex Ground Package System* acknowledged the ability of protective orders to guard the privacy interests of putative class members where their contact information is sought prior to class certification. *Wiegele v. Fedex Ground Package System*, 2007 WL 628041 at *4 (S.D. Cal. February 8, 2007). The Protective Order in place will ensure that the information sought is not misused or publicly disseminated, and the Contact Information Administrator who will have initial responsibility for handling this information will be made a party thereto.

**4. The Information Sought Will Not Affect Defendant's Confidential Customer Proprietary Network Information ("CPNI")**

Defendant has objected to all four interrogatories on the grounds that the information sought is protected from disclosure under 47 U.S.C §222 and 47 C.F.R. §64.2001-64.2011. In fact, the information sought by Plaintiff and the manner in which it is sought fully complies with both statutes. It is a basic tenet of American jurisprudence that, while a party

> "retains certain unwaived privacy rights, these rights are not necessarily absolute. On occasion…privacy interests may have to give way to her opponent's right to a fair trial. Thus courts must balance the right of civil litigants to discover relevant facts against the privacy interests of persons subject to discovery." *Vinson v. Super.Ct.*, 43 Cal.3d 833, 842 (1987) .

ARIAS OZZELLO & GIGNAC LLP

Accordingly, the California courts generally eschew an "absolute privilege for trade secrets and similar confidential information" in favor of a case-by-case approach that balances "privacy against the need for disclosure." *Federal Open Market Committee v. Merrill,* 443 U.S. 340, 362 (1979) (citations omitted)

The text of 47 C.F.R. §64.2001-64.2011 merely requires that a telecommunications company obtain a customer's prior approval before disclosure of, *inter alia*, his CPNI to a third party. Since Plaintiff will be providing the identified class members with an opportunity to object to the disclosure of their contact information, the requirements of these statutes will be satisfied.

As to 47 U.S.C §222, the district court in *ICG Communications, Inc v. Alliance Telecom* found that the language of the statute, specifically the phrase, "*except as required by law*", instills the judiciary with the power to compel a defendant to answer interrogatories which may require the defendant to divulge some CPNI. *ICG Communications, Inc. v. Allegiance Telecom*, 211 F.R.D. 610, 612 (N.D.Cal. 2002). The present case clearly presents a circumstance where such action is necessary. Plaintiff has no other means by which to obtain the information sought. The information sought is necessary in order to identify an alternative class representative, without which the litigation cannot proceed as a class action. If the action is not litigated as a class action, the class members will be deprived of their ability to seek redress for their injury. While the prejudice to the class members is clearly substantial, there is no prejudice to Defendant – other than the fact that Defendant ultimately may be held accountable to the class members for its wrongdoing if a substitute class representative steps forward. Finally, the Protective Order that the district court previously entered in this litigation will protect Defendant's interest in safeguarding the confidentiality of its CPNI.

**5. The Discovery Sought Does Not Fail to Comply With The Privacy Protections Established in Cal.Civ.Proc. Code §1985.3(f) or Cal.Pub.Util. Code §2891**

Defendants further objects to each any every interrogatories in Plaintiff's Second Set of Interrogatories on the grounds that the discovery does not comply with the privacy protections of Cal.Civ.Proc. Code §1985.3(f) and California Public Utilities Code section 2891. This argument must fail.

California Code of Civil Procedure section 1985.3(f) applies to subpoena duces tecum. Since no subpoena has been issued in the present case, the Code is wholly inapplicable. Assuming, *arguendo* that it was applicable, Plaintiff's discovery is nevertheless proper. The Code section merely requires that consumers be informed when certain personal records have been subpoenaed for litigation and offered an opportunity to challenge that subpoena before documents sought are produced. *Foothill Federal Credit Union v. Superior Court*, 155 Cal.App.4th 632, 639 (Cal.Ct.App. 2007).

Likewise, California Public Utilities Code section 2891 requires that a telecommunications company obtain a customer's prior approval before disclosure of, *inter alia*, his contact information to a third party. Since Plaintiff will be providing the identified class members with advanced notice and an opportunity to object to the disclosure of their contact information, the requirements of these statutes will be satisfied.

### 6. The Proposed Notice Of Right To Object Is Appropriate

Although California courts routinely permit the disclosure of class members' contact information without any notice or an opportunity to object, Plaintiff, in an effort to best protect the privacy interests of the class members, has proposes to provide class members with notice and an opportunity to object to the disclosure of their contact information. See *Tierno v. Rite Aid Corp.*, 2008 WL 3287035 (N.D.Cal. July 31, 2008) (noting that *Pioneer* "did not impose a notice requirement."). *See also Crab Addison, Inc. v. Super.Ct.*, (Cal.Ct.App.2008) 169 Cal.App.4th 958, *Lee v. Dynamex, Inc.* (Cal.Ct.App.2008) 166 Cal.App.4th 1325, and *Puerto v. Super.Ct.*, (Cal.Ct.App.2008) 158 Cal.App.4th 1242, (granting discovery of class members' contact information, with no notice or opportunity to

ARIAS OZZELLO & GIGNAC LLP

object.) Such efforts do not go far enough however to appease Defendant.

Despite clear California law on this issue, Defendant argues that Plaintiff's notice should be structured so as to require the class members to affirmatively agree to or "opt-in" to the disclosure of their contact information. Defendant's argument must be rejected because it: (1) places an undue burden on the class members; (2) prejudices Plaintiff by substantially decreasing the likelihood that Plaintiff will obtain the contact information to which he is so clearly entitled; and (3) has been previously rejected by California courts. The California Supreme Court in *Pioneer* expressly rejected the opt-in notice procedure finding that it "makes little sense to make it *more* difficult for plaintiff to contact them [class members] by insisting they first affirmatively contact Pioneer as a condition to releasing the same contact information they already divulged long ago." *Pioneer, supra,* 40 Cal.4th at 206; *see also Puerto, supra*, 158 CalApp. 1245 (rejecting opt-in notice and finding that opt-in system severely advantages the defendant).

Rather, even in the cases where notice has been required, California courts routinely permit plaintiffs to utilize "opt-out" notices such as that proposed by Plaintiff in this case. *See Belaire-West Landscape, Inc. v. Super.Ct.*, (Ca.Ct.App.2007) 149 Cal.App.4th 554, 556 (concluding that opt-out notice adequately protected the privacy rights of the class members.); *see also In re Nat. Western Life Ins. Deferred Annuities Litigation,* 2007 WL 3037457, *3 (S.D.Cal. October 16, 2007) (where district court approved opt-out notice) Accordingly, Plaintiff's proposed Notice of Right to Object is sufficient under California law.

## IV. STATEMENT OF DEFENDANT'S POSITION

### A. Introduction

Plaintiff begins his Introductory Statement stating that this is a "class action lawsuit." Plaintiff is incorrect. This *was* a putative "class action lawsuit" at one point, but it no longer retains that status. This Court has properly denied Plaintiff's motion for class certification; the Ninth Circuit Court of Appeals denied Plaintiff's

Petition for Permission to Appeal the order denying class action certification; and, this Court denied Plaintiff's Motion for Leave to Amend, noting the proposed amendment was "for the sole purpose of shoring up the complaint to support another motion for class certification" (Filing No. 96, at p.4). Plaintiff has not filed a motion for reconsideration or filed a renewed motion for class certification. Accordingly, this litigation now solely concerns Plaintiff's individual claims against Talk America. Plaintiff's proposed discovery is not relevant to any of Plaintiff's claims and thus is not warranted.

Plaintiff similarly errs in asserting that "Plaintiff is a member of the class he seeks to represent." As this Court and the Ninth Circuit have made abundantly clear, Plaintiff and the rest of the putative class are dissimilar because they are subject to different terms and conditions for the services offered by Talk America. The members of the putative class are bound by the terms of the Consumer Service Agreements ("CSAs") including provisions requiring notice of billing disputes, arbitration and waiving rights to pursue a class action. Pursuant to the Ninth Circuit's opinion, Plaintiff is not subject to the CSA but rather his relationship with Talk America is governed by the purported written contract he entered into in 1998 with AOL/Talk America or the tariff regime in existence prior to the Telecommunications Act of 1996, or some combination of the two. *See Douglas*, *supra*, 495 F.3d 1062, 1067, *Ting v. AT&T*, 319 F.3d 1126, 1130-1133 (9th Cir. 2003).

Assuming an adequate and typical class representative intervened in this action and represented the putative CSA class, such a representative would not have "claims or defenses" typical of Plaintiff, nor would the questions of law or fact common to the CSA class predominate over the questions of law or fact relating to Plaintiff's individual claims. *See* Fed. R. Civ. P. 23(a)(3), 23(b)(3). Just as Plaintiff could not satisfy the adequacy, typicality and predominance requirements for a CSA class, a CSA-bound class representative could not satisfy the adequacy, typicality or

ARIAS OZZELLO & GIGNAC LLP

predominance requirements for a class which includes Plaintiff.

Not only is the information sought by Plaintiff via Interrogatories 13-16 irrelevant to the litigation before the Court, Plaintiff's attempt to obtain the names and addresses of Talk America's customers violates those customers' right to privacy. In fact, the "opt-out" notice proposed by Plaintiff clearly violates federal and state statutes which were designed to protect the private contact information of customers of telephone companies. Plaintiff's discovery requests violate the California Constitution and federal and state statutes which provide Talk America's customers with the right to notice and consent before their contact information is released to a third party.

Finally, Interrogatory Nos. 15-16 are unduly burdensome because they would require Talk America to review the electronic files of each of Talk America's more than 20,000 customers in California to determine whether the customer had made a "complaint" regarding the TSR Administration Fee or the Inter-LATA Direct Dial Fee. In light of the clear lack of relevance of this information to Plaintiff's claims against Talk America, Plaintiff's motion to compel should be denied.

**B. Statement of Facts**

Plaintiff filed his original complaint in this matter on June 16, 2006. Plaintiff filed the First Amended Complaint on August 14, 2006. On August 30, 2006, Talk America filed a motion to compel individual arbitration pursuant to the CSA. Plaintiff opposed Talk America's motion claiming he had "never seen the [CSA]" and was not bound by its terms. This Court held Plaintiff was bound by the CSA due to his continued use of Talk America's service. In an attempt to avoid arbitration of his claims, Plaintiff sought mandamus relief from the Ninth Circuit. The Ninth Circuit held that, based on Plaintiff's contention that he had never seen or received the CSA, he was not bound by the contract's terms, including the individual arbitration clause. The Ninth Circuit explicitly distinguished Plaintiff from Talk America's other customers who were on the facts bound by the CSA, explaining why *Crawford v. Talk America*, No. 06-cv-

ARIAS OZZELLO & GIGNAC LLP

0180-RHD, 2005 WL 2465909 (S.D. Ill. Oct. 6, 2005), did not apply to Plaintiff. The court also reserved judgment as to whether certain CSA provisions would be enforceable under California law noting that such a determination "depends and circumstances developed during the course of litigation." *Douglas*, 495 F.3d at 1068. Throughout the litigation concerning Talk America's motion to compel arbitration, Talk America repeatedly argued Plaintiff's arguments in opposition to the arbitration provisions contravened his allegations in the First Amended Complaint and his ability to represent a class of Talk America's customers.

On October 1, 2008, Plaintiff filed his motion for certification of a National Class and a California Subclass consisting of "all residents of the State of California who, at any time during the four-year period of time predating the filing of the original Complaint in this action, were charged and have paid the 'Inter-LATA Direct Dial Fee,' the 'Monthly Billing Fee' or the 'TSR Administrative Fee.'" Once again, in opposition to the motion for class certification, Talk America reiterated Plaintiff was not typical of the proposed class members and could not serve as an adequate representative of either proposed class. This Court agreed noting

> Thus, unlike the majority of Talk America customers who are bound by the CSA, Douglas is not required to give notice of his billing disputes, is not required to arbitrate his claims, and is not prohibited from joining a class action against Talk America in relation to such claims. Because those issues are still central to the resolution of any billing dispute between Talk America and customers who are bound by the CSA, Douglas has not persuasively asserted that his claims are typical of the contractually based claims of most class members. In this respect, his claims are not typical of the members of either the putative California or national classes.

CCO at 14.

On March 23, 2009, Plaintiff sought permission from the Ninth Circuit to appeal the Court's order denying class certification, arguing that this Court committed "clear errors" in denying Plaintiff's motion for class certification and that "the district court

ARIAS OZZELLO & GIGNAC LLP

plainly should have certified the California subclass." On May 28, 2009, the Ninth Circuit denied Plaintiff's petition.

On July 24, 2009, Plaintiff sought leave to amend his complaint in an attempt to "address and rectify" the deficiencies noted by this Court when it denied Plaintiff's Motion for Class Certification. This Court denied Plaintiff's motion recognizing that "Douglas's amendment will not remedy the fact that he is an atypical plaintiff" and held Douglas would not be able to satisfy the requirements of Fed. R. Civ. P. 23(a)(3), (a)(4) and 23(b)(3). CCO at 4-5.

On October 2, 2009, Plaintiff served new discovery on Talk America seeking contact information for 200 California customers who paid the TSR Administration Fee and/or the Inter-LATA Direct Dial Fee and for any California resident who made a customer complaint to Talk America regarding either of the two fees. Talk America timely objected to Plaintiff's interrogatories as detailed below.

**C. Defendant's Statements of Contentions, Points and Authorities**

**1. The Discovery Sought by Plaintiff is Irrelevant to This Action**

Substantively, Plaintiff is not entitled to further class discovery because he has failed to meet his burden to make a prima facie showing that the class certification prerequisites under Federal Rule of Civil Procedure 23 ("Rule 23") have been met or that the requested information will substantiate his class allegations. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (class discovery is not appropriate where, "regardless of the discovery that might [be] undertaken, the requirements of [Rule 23] can never be met."); *accord Mantolete v. Bolger*, 767 F.2d 1416, 1424-1425 (9th Cir. 1985). Based on the rulings of this Court and the Ninth Circuit with respect to Talk America's motion to compel arbitration and Plaintiff's motion for class certification, there is no amount or type of discovery that will substantiate Plaintiff's class allegations that his claims are typical of the putative class, that he is an adequate class representative, or that common questions of law and fact

predominate. Plaintiff's discovery is thus irrelevant for his claims against Talk America.

Numerous federal cases have recognized that a plaintiff is not entitled to class discovery in order to locate a new class representative. For example, in *In re Air Disaster Near Honolulu Hawaii*, 792 F. Supp. 1541, 1551 (N.D. Cal. 1990) the court refused to compel production of putative class members' contact information. The court explained "court-initiated notice to potential claimants may represent an extraordinary and untoward expansion of federal judicial power, inconsistent with fundamental constitutional principles." *Id.* The court further explained that "[w]hile this court in no way faults plaintiffs' counsel for seeking to gather as many claimants as possible . . ., short of plaintiffs satisfying the requirements for class certification under Rule 23 . . ., it is not appropriate for this court to help plaintiffs' counsel round up more clients." *Id.*

Plaintiff is not entitled to discover the identity of putative class members for the purpose of soliciting additional plaintiffs for this lawsuit. *See Reed v. Bowen*, 849 F.2d 1307, 1313-14 (10th Cir. 1988) ("No court has held, in a factual context similar to this case, that counsel has a right to use the power of the courts, through the Rules of Civil Procedure, to find a client who could be intervened as a plaintiff in a suit which has no party plaintiff."); see also *id.* at 1314 ("What we have before us is essentially a use of the power of the court to solicit claims."); *In re Human Tissue Prods. Liab. Litig.*, No. 06-135, 2007 WL 4117237, at *5 (D. N.J. Nov. 13, 2007) (holding that putative class representatives faced with dismissal were not entitled to discovery and noting that, "[i]n effect, the plaintiffs are requesting that this Court allow a fishing expedition into the identity of" potential class members who could establish causal nexus to defendants); *Knutson v. Blue Cross and Blue Shield of Minnesota*, 254 F.R.D. 553, 557 (D. Minn. 2008) ("the Court believes that the discovery [Plaintiff] seeks does not fall within the ambit of Federal Rule of Civil Procedure 26(b)(1). . . . Discovery sought solely for the purpose of inviting others to join this litigation . . . would not be not relevant to the particular claims and defenses currently asserted in this case"); *Bailey v. Cumberland*

*Cas. & Surety Co.*, 180 Fed. Appx. 862 (11th Cir. 2006) (holding no abuse of discretion in denying lead plaintiff an opportunity to identify another lead plaintiff); *Montalto v. Morgan Guar. Trust Co.*, 83 F.R.D. 150, 152 (S.D.N.Y. 1979) (plaintiff was not entitled to discovery of the identity of defendant's employees for the purpose of recruiting them as class members).

In addition to federal caselaw precluding Plaintiff from using the discovery process to identify a new class representative, cases from California state courts also recognize such discovery is unwarranted. The case of *First American Title Ins. Co. v. Superior Court*, 146 Cal. App. 4th 1564, 53 Cal. Rptr. 3d 734 (Cal. App. 2007) is highly instructive. In *First American*, the California Court of Appeal rejected an attempt by a named plaintiff who was never a member of the putative class to obtain precertification discovery from the defendants in order to find a legitimate class representative. In that case, the named plaintiff (Sjobring) purchased a house. 146 Cal.App.4th at 1566. At the insistence of the seller's agent and the escrow company, Sjobring purchased a title insurance policy from First American. *Id.* Sjobring later brought suit against First American and his lender, alleging that First American paid kickbacks to lenders for the referral of title insurance business and asserting unfair business practices, fraud, and other causes of action. *Id.* at 1567. Sjobring purported to represent a class consisting of all persons who bought a title insurance policy from First American (or one of its related entities) for which a part of the premium paid for the policy was received by his lender. *Id.* at 1567- 68. Sjobring ultimately conceded that he was not a member of the class that he purported to represent because First American had not paid any kickback to his specific lender. *Id.* at 1569.

After First American and its related entities moved for summary adjudication of issues, Sjobring filed a motion for precertification discovery to find class representatives, acknowledging that he may not be a proper class representative. *Id.* at 1570. Defendants opposed the motion "on the basis that Sjobring had no standing and could not seek defendants' assistance in finding a plaintiff to sue them." *Id.* at 1572.

ARIAS OZZELLO & GIGNAC LLP

The trial court granted Sjobring's motion over the defendants' objections, "apparently based on its determination of Sjobring's good faith." *Id.* The defendants then filed a petition for writ of mandate. *Id.* at 1573.

The First American court framed the issue as follows: "Can a plaintiff who purports to bring a cause of action on behalf of a class of which he was never a member obtain precertification discovery to find a new class representative? Framed as such, *the answer must be 'no.'*" *Id.* (emphasis added). The court explained that "regardless of whether Sjobring made his initial allegations in good faith, the fact remains that Sjobring is not, and never has been, a member of the class he sought to represent." *Id.* at 1574.

The *First American* court noted that the standing rules for class representatives are designed to prevent abuses of the class action system by prohibiting attorneys from filing lawsuits where they have no client who has been injured. *Id.* at 1577. The court concluded that it could not permit attorneys to make an "end-run" around the standing rules "by filing class actions in the name of private individuals who are not members of the classes they seek to represent and then using precertification discovery to obtain more appropriate plaintiffs." *Id.* (emphasis added).

After holding that "a plaintiff who purports to bring a cause of action on behalf of a class of which he was never a member" cannot "obtain precertification discovery to find a new class representative," *id.* at 1573, the Court went on to examine the parties' respective rights. *Id.* at 1576. With respect to Sjobring, the court explained that "Sjobring's interest in obtaining a proper plaintiff to represent the class is nonexistent. Sjobring is not a member of the class and never has been; he has no cognizable interest in seeing this class action proceed." *Id.* at 1577. Although the court acknowledged that "the members of the putative class may have an interest in pursuing the class action," the court noted that the actual class members could pursue further legal action if they so desired and that "Sjobring makes no argument that any future action they might pursue would be time-barred, or offer any other reason why the class members might be denied

relief if this action is unable to proceed on their behalf." *Id.* In conclusion, the court found held that "[p]recertification discovery under these circumstances would be an abuse of discretion." *Id.*

Plaintiff attempts to distinguish *First American* by contending that "he <u>is still a class member</u> and has a vested interest in this litigation." Plaintiff is incorrect.

First, this matter is not a "class action." *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3rd Cir. 1998), *abrogation on other grounds recognized*, *Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000) ("Plaintiffs appear to have confused this complaint with a class action complaint. The class must, however, be certified before it may become a class action. Until the putative class is certified, the action is one between the [individual plaintiffs] and the defendants.") Until a class is certified, there is no "class" for Plaintiff to be a member of.

Second, even if the class proposed by Plaintiff could be certified, Plaintiff would not be a member of such a class. This Court has repeatedly recognized that Plaintiff is not a member of the putative class because he is not a party to the CSAs, the contract which establishes the terms and conditions of Talk America's service with the vast majority of its customers. *See* CCO at 13-14, OMA at 4-5.

Accordingly, Plaintiff's "interest in obtaining a proper plaintiff to represent the class is nonexistent. [Plaintiff] is not a member of the class and never has been; he has no cognizable interest in seeing this class action proceed." *First American*, 146 Cal. App. 4th at 1577. Plaintiff is not an appropriate class representative, nor does he have a justifiable interest in ensuring that a class, of which he cannot be a part of, is certified. Although Talk America has no doubt that Plaintiff and his counsel acted in good faith in seeking to represent the putative class when they filed the original complaint, the court must be vigilant in preventing attorneys from "filing class actions in the name of private individuals who are not members of the classes they seek to represent and the using pre-certification discovery to obtain more appropriate plaintiffs." *Id.*

Plaintiff further asserts that "[t]he discovery sought is essential to the identification of a substitute class representative. Without an adequate class representative, the action cannot proceed as a class action, leaving a myriad of class members utterly without redress for their injury." Respectfully, Plaintiff's argument is misplaced. The issue before the Court is not whether the class Plaintiff proposed in his Motion for Leave to Amend could be certified under Rule 23, but rather the issue is whether Plaintiff may propound discovery on Talk America for information entirely irrelevant to Plaintiff's claims against Talk America.

Moreover, denying Plaintiff's Motion to Compel has little to no effect on the rights of the proposed class members. As noted in *First American*, Plaintiff has not made any argument that the actual class members will be unable to pursue any purported claims they may have against Talk America. *Id.* at 1577.

**2. Plaintiff's Proposed Discovery Violates Talk America's Right to Privacy.**

As the United States Supreme Court has stated: "The unwilling listener's interest in avoiding unwanted communication . . . is an aspect of the broader 'right to be let alone'" which is one of "'the most comprehensive of rights and the right most valued by civilized men.'" *Hill v. Colo.*, 530 U.S. 703, 716-17 (2000) (citation omitted). Likewise, the Ninth Circuit has explained that persons have a legitimate privacy interest in not appearing on a list of names and addresses, since such a list may make them subject to unwanted communications. *See Painting Indus. of Haw. Mkt. Recovery Fund v. U.S. Dep't of the Air Force*, 26 F.3d 1479, 1483 (9th Cir. 1994) (observing that "a list revealing only the names and addresses of federal retirees constituted a 'significant' invasion of privacy") (citation omitted).

Compelled discovery within the realm of the right to privacy "cannot be justified solely on the ground that it may lead to relevant information." *Britt v. Superior Court*, 20 Cal. 3d 844, 856 (1978). "Even when discovery of private information is found

ARIAS OZZELLO & GIGNAC LLP

directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'" *Lantz v. Superior Court*, 28 Cal. App. 4th 1839, 1854 (1994) (citations omitted).

While both federal and California statutes[8] provide that disclosure of a telephone customer's information may be made with the consent of the customer, the first line of defense in the protection of personal privacy must be the requirement of a compelling need to know before disclosure is ordered. *See Davis v. Leal*, 43 F.Supp.2d 1102, 1110 (E.D. Cal. 1999) (observing that the availability of a protective order does not ameliorate all privacy concerns and that any privacy intrusion should be narrowly circumscribed; citing *Moskowitz v. Super. Ct.*, 137 Cal.App.3d 313, 316, 187 Cal.Rptr. 4, 6 (1982) ("even where the balance weighs in favor of disclosure of private information, the scope of disclosure will be narrowly circumscribed; such an invasion of the right to privacy must be drawn with narrow specificity and is permitted only to the extent necessary for a fair resolution of the lawsuit.") Because the procedures for obtaining such consent themselves require an unsolicited communication, vague claims of relevance should not suffice. Instead, such measures should not be resorted to until it has first been determined that there is a legitimate need for the information sufficient to overcome the privacy interests of the policyholders. *See Painting Indus.*, 26 F.3d at 1485 (observing that "[a]ny additional public benefit the requesters might realize through those contacts is inextricably intertwined with the invasions of privacy that those contacts will work"). Significantly, Plaintiff has "the burden . . . to demonstrate that the information is directly relevant to the case, and that the information needs of the

[8] Specifically, 47 U.S.C. § 222(c)(1) provides "Except as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories"; 47 C.F.R. § 64.2001-64.2011; and, Cal. Pub. Util. Code § 2891.

ARIAS OZZELLO & GIGNAC LLP

case outweigh the need for non-disclosure." *Davis*, 43 F.Supp.2d at 1110. Plaintiff has failed to do so in this case.

As demonstrated above, Plaintiff has not "demonstrate[d] that the information is directly relevant to the case" in fact, the information sought has no bearing whatsoever on Plaintiff's claims against Talk America. Accordingly, Plaintiff has not provided the Court with any basis to find that Plaintiff's requests should outweigh the privacy rights of Talk America's customers.

### 3. Plaintiff's Proposed Notice to Talk America's Customers Fails to Comply With Federal and State Law.

Plaintiff attempts to soften its intrusion on the privacy interests of Talk America's customers by proposing an "opt-out" notice. Plaintiff however fails to address the fact that an "opt-out" policy is explicitly rejected under federal regulations and state law.

Section 64.2007(3) of Chapter 47 of the Code of Federal Regulations is explicitly clear that "[e]xcept for use and disclosure of [customer proprietary network information ("CPNI")] that is permitted without customer approval under section §64.2005, or that is described in paragraph (b)(1) of this section, or as otherwise provided in section 222 of the Communications Act of 1934, as amended, a telecommunications carrier may only use, disclose, or permit access to its customer's individually identifiable CPNI subject to *opt-in* approval.[9]" (emphasis added) Similarly, Section 2891(a) of the California Public Utilities Code provides that "[n]o telephone . . . corporation shall make available to any other person or corporation, without first obtaining the residential subscriber's consent, *in writing*, any of the following information: . . . (4) Demographic information about individual residential subscribers, or aggregate information from which individual identities and characteristics have not been removed." (emphasis added).

[9] "Opt-in approval" is defined in 47 C.F.R. § 64.2003 as "a method for obtaining customer consent to use, disclose, or permit access to the customer's CPNI. This approval method requires that the carrier obtain from the customer affirmative, express consent allowing the requested CPNI usage, disclosure, or access after the customer is provided appropriate notification of the carrier's request consistent with the requirements set forth in this subpart."

ARIAS OZZELLO & GIGNAC LLP

Plaintiff simply ignores the requirements of these statutes contending that "[s]ince Plaintiff will be providing the identified class members with an opportunity to object to the disclosure of their contact information, the requirements of these statutes will be satisfied" and "[s]ince Plaintiff will be providing the identified class members with advanced notice and an opportunity to object to the disclosure of their contact information, the requirements of these statutes will be satisfied."[10] But the statutes simply do not permit a customer's CPNI to be released without an affirmative written authorization. Plaintiff's proposed notice does not comply with federal regulations and state law and accordingly, Plaintiff's motion must be denied.

**4. Plaintiff's Proposed Discovery Places an Undue Burden on Talk America.**

Finally, Rule 26(b)(2) requires the Court to weigh the burden or expense of proposed discovery against its likely benefit, taking into account "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Green v. Baca*, 219 F.R.D. 485, 493 (C.D. Cal. 2003); accord *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053-54 (S.D. Cal. 1999) ("In determining whether a request for discovery will be unduly burdensome to the responding party, the court weighs the benefit and burden of the discovery . . . . This balance requires a court to consider the needs of the case, the amount in controversy, the importance of the issues at stake, the potential for finding relevant material and the importance of the proposed discovery in resolving the issues.")

In Interrogatory Nos. 15 & 16, Plaintiff requests that Talk America identify the name, last known residential address and e-mail address of each California resident which made a customer complaint regarding the TSR Administration Fee and/or the Inter-LATA Direct Dial Fee. In Talk America's Answer to Interrogatory No. 6, Talk

[10] Similarly, Plaintiff references a number of California state cases which approved of an "opt-out" notice. However none of the cases cited by Plaintiff concern information subject to the privacy protections of 47 C.F.R. § 64.2007(3) or Cal. Pub. Util. Code § 2891.

ARIAS OZZELLO & GIGNAC LLP

America stated that at least 27,984 California residents contracted for long distance telephone service with TALK AMERICA during the period of August 1, 2002 to the present and were charged and paid an "Inter-LATA Direct Dial Fee", a "Monthly Billing Fee" and/or a "TSR Administrative Fee."

As noted by Jeffrey Earhart, former Executive Vice President for Customer Service, in his deposition, for customer complaints or inquiries that were submitted to Talk America via telephone[11] a notation would be made in Talk America's electronic records for the customer (Earhart Depo. 41:16-20). Mr. Earhart described Talk America's records noting that "[t]here is a general note section where a customer service rep is supposed to put in the general idea of that call. Below that is what I just described where they can actually pick a category of what the call might entail" (Earhart Depo. 42:24-43:4). Mr. Earhart further testified that the "General Notes" section in the customer records is not electronically searchable. ("Q: Within the customer account records, and specifically with respect to the General Note sections and the fields that one has the opportunity to check, is that also electronically searchable? A. The General Notes section, I don't believe so. The categorized fields, yes.") (Earhart Depo. 43:23-44:6).

Because the General Notes section of Talk America's customer records are not electronically searchable, in order to provide the information requested by Plaintiff, Talk America will be required to review the records associated with each of the 27,894 California accounts as to whether a "customer complaint" was made regarding the TSR Administration Fee or the Inter-LATA Direct Dial Fee. Plaintiff suggests that since few customers would have been "sufficiently motivated" to complain to Talk America, a review of the General Notes would not be burdensome to Talk America. Plaintiff fails

[11] Both Mr. Earhart and Ms. Valerie Herbenick testified that Talk America did not retain customer complaints or inquiries received via letter after the initial response to the customer. (Q. And do you know what was done with the physical letter itself, whether it was maintained, whether it was destroyed after there was a notation made to the account, or something else? A. To the best of my knowledge, we did not maintain customer letters.) (Earhart Depo. 41:10-15); (Herbenick Depo. 46:19-47:22). Plaintiff's suggestion that Talk America should have retained copies of correspondence for perpetuity to which it had already responded is unfounded and without any support.

ARIAS OZZELLO & GIGNAC LLP

to recognize that regardless of the number of complaints, **each** customer's account must be reviewed in order to determine what if anything is noted in the General Notes section of the account, and then whether the section contains a complaint regarding one of the fees at issue in this litigation. Such an effort would take hundreds, if not thousands, of hours by Talk America employees. The burden on Talk America would be tremendous, particularly in light of the fact that such information is irrelevant to this litigation.

## IV. CONCLUSION

### A. Plaintiff's Conclusion

For all of the foregoing reasons, and on the basis of the authorities cited herein, Plaintiff respectfully requests that the Court grant the Motion to Compel and enter an order in the form proposed. Moreover, Plaintiff should be awarded reasonable attorneys' fees and costs in bringing this Motion to Compel.

### B. Defendant's Conclusion

Plaintiff's Motion to Compel should be denied because the interrogatories propounded by Plaintiff seek information not relevant to the litigation between Plaintiff and Talk America, the interrogatories violate Talk America's right of privacy protected by the California Constitution and federal and state statutes, and the interrogatories place an undue burden on Talk America. Talk America opposes Plaintiff's request for attorneys' fees and costs because Talk America had a substantial justification for objection to Plaintiff's interrogatories and it would be unjust to award Plaintiff fees in this instance. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

Dated: January 27, 2010

ARIAS OZZELLO & GIGNAC LLP

By: /s/
J. Paul Gignac, Esq.
Kiley L. Grombacher, Esq.
4050 Calle Real, Suite 130
Santa Barbara, California 93110
Telephone: (805) 683-7400
Facsimile: (805) 683-7401

Howard A. Goldstein, Esq.
Law Offices of Howard A. Goldstein
Riverside Drive #608
Sherman Oaks, California 91423
Telephone: (818) 779-1750
Facsimile: (818) 779-1850

Dated: January 27, 2010

KUTAK ROCK LLP

By: ______________________
Bartholomew L. McLeay *pro hac vice*
Jeremy Fitzpatrick *pro hac vice*
Paul R. Gwilt *pro hac vice*
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186

and

Edwin J. Richards, Esq.
Kutak Rock LLP
18201 Von Karman Avenue, Suite 1100
Irvine, CA 92612-1077
Telephone: (949) 417-0999

Attorneys for Defendant
TALK AMERICA, INC.

# PROOF OF SERVICE

## UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

I am employed in the State of California, County of Santa Barbara. I am over the age of 18 and not a party to the within suit; my business address is 4050 Calle Real, Suite 130, Santa Barbara, California 93110.

On January 27, 2010, I served the documents described as:

**Joint Stipulation Regarding Plaintiff's Motion to Compel Defendant's Response to Plaintiff's Interrogatories Set Two**

on the interested parties in this action by sending [ ] the original [or] [✓] a true copy thereof to interested parties as follows:

Howard A. Goldstein
Law Office of Howard A. Goldstein
13701 Riverside Drive #608
Sherman Oaks, California 91423

Paul F. Donsbach
Kutak Rock LLP
Suite 1100
18201 Von Karman Avenue
Irvine, CA 9212
Telephone: (949) 417-0999
Facsimile: (949) 417-5394

Bartholomew L. McLeay
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186

[✓] **BY MAIL (enclosed in a sealed envelope):** I deposited the envelopes for mailing in the ordinary course of business at Santa Barbara, California. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice, the sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Santa Barbara, CA.

[ ] **BY FAX:** I hereby certify that this document was served by facsimile delivery on the parties listed herein at their most recent fax number of record in this action from Santa Barbara, California.

[ ] **BY E-MAIL:** I hereby certify that this document was served by e-mail delivery on the parties listed herein at their most recent e-mail addresses of record in this action.

[ ] **BY PERSONAL SERVICE (enclosed in a sealed envelope):** I delivered such envelope by hand to the offices of the addressees named herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **January 27, 2010** at Santa Barbara, California.

Elizabeth Graham
Type or Print Name

[signature]
Signature

ARIAS OZZELLO & GIGNAC LLP