**LINK: 119**

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE DOUGLAS,<br><br>        Plaintiff,<br><br>        v.<br><br>TALK AMERICA, INC. et al.,<br><br>        Defendants. | Case No. CV 06-03809 GAF (RCx)<br><br>MEMORANDUM & ORDER REGARDING TALK AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I.  INTRODUCTION AND BACKGROUND

Plaintiff Joe Douglas ("Plaintiff") was a Talk America customer from April 21, 1998 to September 27, 2005.  (Separate Statement of Undisputed Facts and Supporting Evidence ("SUF"), Ex. 1 [Herbenick Decl. at ¶ 4].)  When Plaintiff became a customer, Defendant Talk America ("Defendant"), then known as Tel-Save, Inc., offered customers a $0.05 per minute promotional rate for calls made on or before June 1, 1998. (SUF, Ex. 2 [Ring Decl. at 2].)  After the promotional offer ended, Plaintiff's services reverted to $0.09 per minute with no minimum usage or monthly recurring charges. (Id.)

Around March 15, 2001, Defendant offered its customers the Nickel Minute Option ("NMO Plan").  (SUF, Ex. 2 [Ring Decl. at ¶ 6].)  The NMO Plan featured a $0.05 per minute and a $5.95 monthly recurring charge for long distance service.  (Id.)

1

2   Plaintiff signed up for the NMO Plan around March 27, 2001 and opted out of paper

3   billing.  (Responses to Plaintiff's Statement of Additional Facts ("Responses") at ¶ 1.)

4   Instead, Plaintiff agreed that Defendant would bill the amount due for monthly services

5   rendered on Plaintiff's credit card.  (Id. ¶ 3.)  Like most charges reflected on credit card

6   bills, Plaintiff's monthly credit card statements reflected Defendant's total charge

7   without itemization.  (Id. at ¶ 8.)  Accordingly, for many years Plaintiff paid for services

8   rendered without obtaining any itemization of the monthly long distance charges.

9       Over the years, additional service charges were added to Plaintiff's bills.

10   Defendant first charged a $9.95 TSR Administration Fee in April 2003, (SUF, Ex. 4

11   [Gwilt Decl. at 1-2]), and a $6.95 Inter-lata Direct Dial Fee in May 2004.  (Id. at 4.)

12   Thus, by 2005, Plaintiff's monthly bills included the monthly billing fee of $5.95, the

13   $9.95 TSR Administration Fee and the $6.95 Inter-lata Direct Dial Fee.  Plaintiff paid

14   these fees without protest until August 2005.

15       On August 17, 2005—after his credit card was canceled—Plaintiff, apparently

16   for the first time in many years, received a paper bill that itemized the charges and fees

17   for the NMO Plan.  (Id. at ¶ 9.)  In the bill, Plaintiff was charged all three fees: the

18   $6.95 "Inter-lata Direct Dial Fee;" the $5.95 "Monthly Billing Fee;" and the $9.95

19   "TSR Administrative Fee." (Id. at ¶ 13.)

20       Plaintiff contends that the charges: (1) violate Section 201(b) of the Federal

21   Communications Act ("FCA") which prohibits the imposition of charges that are

22   "unjust and unreasonable," (Compl. ¶¶ 26-34); (2) breached a written agreement with

23   Defendant that he entered into on or about July 18, 2005, limiting charges to $0.05 per

24   minute for long-distance services, (id. ¶¶ 35-42); (SUF, Ex. E [Douglas Depo. at 1]);

25   and (3) violate the California Consumer Legal Remedies Act ("CLRA") and the Unfair

26   Competition Law ("UCL").  (Compl. ¶ 43-63.)

27       Defendant now moves for summary judgment on all claims.  (Docket No. 119,

28   Not. at 1-2.)  Defendant contends that a private party may not pursue a Section 201(b)

2

claim until the particular charge or practice has been declared unjust or unreasonable by the Federal Communications Commission ("FCC") and that the charges at issue here have never been addressed by the Commission.  (Mem. at 5-6.)  Defendant further contends that Plaintiff has not presented sufficient evidence of the terms and conditions of his alleged written agreement with Defendant to recover on a breach of contract theory.  (Id. at 7-8.)  As to the CLRA and UCL claims, Defendant asserts that the CLRA claim is barred by the statute of limitations, (id. at 8-9), and that he lacks standing under both claims because he did not rely on any representations by Defendant regarding fees or services.  (Id. at 11-12.)

As discussed in greater detail below, the motion for summary judgment on the Section 201(b) claim is **DENIED** because the FCC, in its Truth-In-Billing order provided detailed guidelines sufficient to support a Section 201(b) claim for false and misleading billing.  The motion as to the remaining claims is **GRANTED**.  Plaintiff has failed to present sufficient evidence of the existence of a written agreement to proceed on that claim, and lacks standing to pursue his CLRA and UCL claims because he did not rely on any statements made by Defendant regarding the fees at issue in this case.

## II.  DISCUSSION

### A.  LEGAL STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, when addressing a motion for summary judgment, this Court must decide whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the

movant meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 250. The "opponent must do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**B.  PLAINTIFF'S SECTION 201(B) FCA CLAIM**

### 1. THE COURT'S TENTATIVE RULING

Under Section 201(b) of the FCA, Plaintiff asserts claims arising from charges that he argues are unjust and unreasonable.  47 U.S.C. § 201(b).  That statute provides in pertinent part that charges that are "unjust or unreasonable [are] declared to be unlawful." Id.  Section 206 provides that a carrier who engages in any conduct prohibited by "this chapter," which includes Section 201, "shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequences of any such violation." 47 U.S.C. § 206.  Section 207 establishes a private right of action on the part of any such injured person, and authorizes such person to bring suit to recover damages "in any district court of the United States of competent jurisdiction . . . ." 47 U.S.C. § 207.  Read together, these statutes would appear to establish a federal claim that Plaintiff may bring against Defendant arising out of the allegedly unjust and unreasonable fees identified in his complaint.  The Ninth Circuit acknowledged a similar argument but concluded:

> It is arguable that the plain language of § 201(b) contains an
> implication that private parties may pursue remedies for violations of
> the statute. However, given the broad language of the statute, a more
> reasonable interpretation is that it is within the Commission's
> purview to determine whether a ***particular practice*** constitutes a
> violation for which there is a private right to compensation. See In re
> Long Distance Telecomm. Litig., 831 F.2d 627, 631 (6th Cir.1987),
> as amended ("This [charge of unreasonable practices] is a

4

1    determination that Congress has placed squarely in the hands of the

2    FCC.")

3    North Cnty. Commc'ns Corp. v. California Catalog & Tech., 594 F.3d 1149, 1158 (9th

4    Cir. 2010).

5        In short, North County concluded that a private party has no federal claim for

6    relief under Section 201(b) unless the challenged practice giving rise to the claim had

7    previously been determined by the Commission to be unlawful.  See id.  It therefore

8    upheld the district court's dismissal of the claim.  Id. at 1162.

9        Based on North County, the Court announced at the hearing on this motion its

10   tentative to grant Defendant's motion for summary judgment on the Section 201(b)

11   claim.  The Court found Plaintiff's efforts to distinguish the clear holding of North

12   County, a Ninth Circuit case, and his reliance on out-of-circuit authority to be

13   unpersuasive.  However, during the hearing, Plaintiff indicated that the Commission has

14   acted on the subject of billing statements and fees in its In re Truth-In-Billing & Billing

15   Format Order, 14 F.C.C.R. 7492 (1999).  The Court's review of that order raised

16   sufficient concerns that the parties were requested to provide further briefing.  Having

17   now considered the order and the parties supplemental memoranda, the Court concludes

18   that the Section 201(b) claim survives this motion.

19       **2. THE EXISTENCE OF A FEDERAL CLAIM FOR RELIEF UNDER SECTION**

20       **201(B)**

21       As noted above, North County held that the plaintiff could not state a federal

22   claim because the Commission had not determined that the practice at issue established

23   a right to compensation under Section 201(b).  594 F.3d at 1160.  The court determined

24   that "it is within the ***Commission's purview to determine whether a particular practice***

25   ***constitutes a violation for which there is a private right to compensation***."  Id. at 1158

26   (emphasis added).  In North County, the dispute centered around a local exchange

27   carrier's right to receive compensation from commercial radio service providers who

28   originated traffic that terminated with North County's end users.  Id. at 1151.  North

5

1    County sought a declaration that it was entitled to such compensation and for a

2    determination of the rate that it could recover, even though it admitted that the

3    determination "may be a matter beyond the expertise of this court and within the

4    expertise of the appropriate regulatory body . . . ." Id. at 1153.

5        The Circuit noted that North County's right to recover was "hampered by the

6    very relief it seeks—a declaratory judgment." Id. at 1154.  The nature of the relief

7    highlighted the fact that the Commission had not spoken on the subject and had

8    therefore made no determination of the right to recover or the proper amount of any

9    such recovery.  Id. at 1160.  Thus, in rejecting the claim, the Circuit explained that an

10   "entry of a declaratory judgment 'would put interpretation of a finely-tuned regulatory

11   scheme squarely in the hands of private parties and some 700 federal district judges,

12   instead of in the hands of the *Commission*." Id. at 1158 (emphasis added).

13       This case is different.  First, the plaintiff in this case does not seek declaratory

14   relief but rather seeks compensation for questionable charges that were inadequately

15   described on his telephone bill.  Second, it appears that the Commission has determined

16   that the practice of making "inadequate, incomplete, and misleading disclosures,"

17   (Compl. at ¶ 29), creates a private right to compensation under Section 201(b). In its

18   order entitled In re Truth-In-Billing & Billing Format, ("In re Billing") the Commission

19   held that "[t]he *principles and guidelines* established in this Order are intended to

20   define more specifically *what constitutes a violation of section 201 in the billing*

21   *context* . . . ." 14 F.C.C.R. 7492, 7516 (1999).  See also Beattie v. CenturyTel, Inc. 234

22   F.R.D. 160, 172 (E.D. Mich. 2006) (using In re Billing in its Section 201(b) analysis

23   and held "[the fee] does not satisfy the FCC's truth-in-billing requirement and

24   constitutes an unreasonable practice within the meaning of section 201(b)"); see also

25   Bowers v. Windstream Ky. E., LLC., 2010 WL 1757938, at *7-8 (W.D. Ky. 2010); see

26   also Alliance Commc'ns Co-op, Inc. v. Global Crossing, 663 F. Supp. 2d 807, 835

27   (D.S.D. 2009) ("Failure to comply with [In re Billing's] requirement constitutes an

28   unjust and unreasonable practice in violation of § 201.") Accordingly, this is a case

where the Commission has spoken.  Third, unlike <u>North County</u>, where the case would have required the court to engage in complex rate-making, the case here deals with issues involving whether or not certain language was inadequate, incomplete, false or misleading.  This is precisely the kind of inquiry that engage courts at all levels, throughout the country, on a daily basis.  Finally, <u>In re Billing</u>, through its establishment of core principles, tacitly acknowledges that every formulation of words need not be presented to the Commission before a befuddled plaintiff can pursue a legal remedy in the district court.  Otherwise, the Commission would become bogged down in endless litigation of matters within the competence of the federal courts and would be diverted from addressing the much more highly technical matters that demand its expertise—disputes like the one in <u>North County</u>.  Thus, <u>North County</u> is distinguishable.

As noted, <u>In re Billing</u> sets forth a set of what it describes as "core principles." Under the Commission's "second core principle," it held that "bills should contain full and non-misleading descriptions of the service charges that appear therein."  <u>Id.</u> at 7516. The Commission further explained that: (1) "services included on the telephone bill must be accompanied by a brief, clear, plain language ***description of the services rendered***;" and (2) services that are charged cannot contain "***vague or inaccurate descriptions***...."  <u>In re Billing</u>, 14 F.C.C.R. at 7516-17 (emphasis added).  Here, Plaintiff argues that the three fees charged by Defendant violated Section 201(b) because Defendant made "inadequate, incomplete, and misleading disclosures to consumers regarding the assessment and collection of the 'Inter-lata Direct Dial Fee,' the 'Monthly Billing Fee,' and the 'TSR Administration Fee . . . . '" (Compl. at ¶ 29); <u>see also</u> (Opp. at 3-7.)  Because the Commission has already determined under its "second core principle" that vague, inaccurate, and incomplete descriptions of charges violate Section 201(b), <u>In re Billing</u>, 14 F.C.C.R. at 7516-17, Plaintiff has a private right to compensation under this section if he can prove that these fees in fact violated the "second core principle."

### 3. SECTION 201(B) VIOLATION

Plaintiff alleges that the following three fees violate Section 201(b): (a) Inter-lata Direct Dial Fee; (b) the Monthly Billing Fee; and (c) TSR Administration Fee. (Opp. at 3-7.)

#### a. Inter-lata Direct Dial Fee

Plaintiff claims that from May of 2004 until February of 2007, Defendant did not provide a description of the Inter-lata Direct Dial Fee to its customers. (Opp. at 6.) It was not until February of 2007 that Defendant provided a description of the fee pursuant to the terms of the Consent Decree between the Defendant and the Commission. (Grombacher Decl., Ex. 5 at 1, 4.) In view of the Commission's determination in In re Billing that bills should contain a full description of the service fees that are charged to the customers, 14 F.C.C.R. at 7516-17, there is evidence from which a trier of fact could conclude that the Inter-lata Direct Dial Fee was nothing more than an opaque combination of words that informed Defendant's customers of nothing. Accordingly, because Defendant did not provide Plaintiff a description of the fee, he has, at the very least, raised a genuine issue of material fact that Defendant violated Section 201(b).

#### b. Monthly Billing Fee

Plaintiff claims that Defendant violated Section 201(b) by failing to provide a description of the Monthly Billing Fee. (Opp. at 7.) Based on the evidence in the record, Defendant, in fact, does not provide "customers with a written description of the Monthly Billing Fee." (Grombacher Decl., Ex. 7 [Heitkampt, Chief, Response to Enforcement Bureau at TA 000517].) In In re Billing, the Commission directly addressed this issue and held that a service fee identified as "monthly fee" requires a description. See 14 F.C.C.R. at 7516-17 ("For example, many complaints we have received involve charges identified on local telephone bills simply as *'monthly fee'* or 'basic access,' *without further explanation*) (emphasis added).

1   Thus, because the Commission has held that failing to provide a description of a

2   monthly fee constitutes a violation of Section 201(b), Plaintiff has, at the very least,

3   raised a genuine issue of material fact that Defendant violated this section for failing to

4   provide a description of the monthly billing fee as well.

5   ### c. The TSR Administration Fee

6   Plaintiff claims that prior to February 28, 2007, Defendant's charged a fee

7   called "TSR Administration Fee."  (Opp. at 4-5.)  Plaintiff alleges that this name was

8   misleading because it sounded similar to a government mandated fee called

9   "Telecommunication Relay Service Fee" or "TRS Fee."  (Id. at 5.)  In fact, on February

10   28, 2007, the Commission ordered Defendant to change the name of this fee to

11   "Wholesale Carrier Charge" and to provide a description pursuant to the Consent

12   Decree entered into by the Commission and Defendant.  (Grombacher Decl., Ex. 4

13   [Consent Decree at TA 000565-571].)

14   Because the Commission mandated Defendant to change the name of the TSR

15   Administration Fee to "Wholesale Carrier Charge"—a "clear non-misleading, plain

16   language description", (id. at TA 000568)—Plaintiff has raised a genuine issue of

17   material fact that Defendant was using a misleading description of the fee prior to the

18   consent decree and thus, in violation of Section 201(b).  See In re Billing, 14 F.C.C.R.

19   at 7516-17.

20   ### d. Conclusion

21   Based on the foregoing discussion, Plaintiff has raised a genuine issue of

22   material fact that Defendant violated Section 201(b).  Because of this violation, Plaintiff

23   had to pay additional fees in his monthly phone bill.  Therefore, Plaintiff has

24   sufficiently proven that he has sustained damages in consequence of the Section 201(b)

25   violation—hence satisfying Section 206's standing requirement as well.  47 U.S.C. §

26   206.  Thus, this Court **DENIES** Defendant's motion for summary judgment as to the

27   Section 201(b) claim.

28

## C.  PLAINTIFF'S BREACH OF WRITTEN CONTRACT CLAIM

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 70 Cal. Rptr. 3d 667, 679 (Ct. App. 2008). Pursuant to the Federal Rules of Evidence, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required . . . ." FED. R. CIV. P. 1002. Evidence other than the writing is admissible only if: (1) the original is lost or destroyed, (2) the original is not obtainable, (3) the original is in possession of the opponent, or (4) if the writing pertains to a collateral matter. Id. at 1004.

During summary judgment, the "moving party without the ultimate burden of production at trial . . . has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense *or show that the nonmoving party does not have enough evidence of an essential element* to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (emphasis added).  "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. Id. at 1103.

In his breach of contract cause of action, Plaintiff alleges not an oral or implied contract but rather a written agreement with Defendant.  (Compl. ¶ 38.)  Moreover, his timing was reportedly impeccable as he claims that he entered into that contract approximately thirty days before he received the first and only bill that he ever examined and that he discovered to contain the incomprehensible charges described above.  The problem here, however, is that the existence of the contract appears to have

10

been greatly exaggerated.   To prove the contents of the written contract, the Federal Rules of Evidence ("FRE") would require Plaintiff to either produce the written agreement into evidence or prove one of the four exceptions apply.  See FED. R. CIV. P. 1002, 1004.  Here, Plaintiff has done neither: He has not produced into evidence the written contract or proven that the contract was lost or destroyed, not obtainable, in possession of the Defendant, or that it pertains to a collateral issue.

Because of FRE section 1002, Plaintiff cannot prove the existence of a contract, the terms of the contract or whether there was in fact a breach.  As a result, Defendant has met its burden of pointing to an absence of evidence on an essential element of Plaintiff's case.  See Nissan, 210 F.3d at 1102 (As Circuit law teaches, Defendant—the moving party without the ultimate burden of persuasion at trial—can prevail on summary judgment by proving that "the nonmoving party does not have enough evidence of an essential element.")

Thus, this Court **GRANTS** Defendant's summary judgment motion as to the breach of contract claim.

**D.  PLAINTIFF'S CLRA AND UCL CLAIMS**

"In a claim for false advertising, one of [the] requirements is reliance.  California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation."  Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007); see also Caro v. Procter & Gamble Co., 22 Cal. Rptr. 2d 419, 433 (Ct. App. 1993).  A claim under the UCL also "imposes an actual reliance requirement on plaintiff's prosecuting a private enforcement action under the UCL's fraud prong."  In re Tobacco II Cases, 207 P.3d 20, 39 (Cal. 2009).  The reliance requirement in a false advertising claim is a manifestation of the requirement that the false advertisement cause some injury or damage to the plaintiff.  Id. at 39 (citing Molko v. Holy Spirit Ass'n, 46 Cal.3d 1092, 1108 (1988) ("there is no doubt that reliance is the causal mechanism of fraud.")

In re Tobacco II Cases also suggested that, because the objective of Proposition 64 "was to impose limits on private enforcement actions under the UCL," the statutory language "as a result of" should be construed to effectuate that purpose. Id. Taking their lead from the California Supreme Court, later decisions out of appellate courts have held that the reliance requirement applies in cases under the "unlawful" and "unfair" prongs of the UCL. See Hale v. Sharp Healthcare, 108 Cal. Rptr. 3d 669, 679 (Ct. App. 2010); see also Durrell v. Sharp Healthcare, 108 Cal. Rptr. 3d 682, 693-94 (Ct. App. 2010); see also In re Actimmune Marking Litigation, 2010 WL 3463491, *8 (N.D. Cal. 2010). As the Hale court noted:

> Construing the phrase "as a result of" in Business and Professions Code section 17204 in light of Proposition 64's intention to limit private enforcement actions under the UCL, we conclude the reasoning of Tobacco II applies equally to the "unlawful" prong of the UCL, when, as here, the predicate unlawful conduct is misrepresentation. Indeed, the court explained in Tobacco II: "We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers.

108 Cal. Rptr. at 679; see also Carney v. Verizon Wireless Telecomms., Inc., 2010 WL 1947635, *3 (S.D. Cal. 2010) (holding that "for UCL claims based on misrepresentations, the plaintiff must show actual reliance regardless of whether the claim arises under the 'unfair,' 'unlawful' or 'fraudulent' prong of the UCL").

Here, Plaintiff bases his statutory claims essentially on the misleading descriptions in his billing statements and the failure to disclose the nature of the existence and the charges when he signed up. But there is no evidence regarding what occurred when he claims to have signed up. Plaintiff testified that he remembers only that the rate for the NMO Plan was "[s]omewhere around 5 cents a minute" and that he could remember nothing else regarding the circumstances under which he signed up for

12

the plan.  (SUF, Ex. E [Douglas Depo. at 1-2].)  Based on this alone, Plaintiff has failed to show he has relied on a misrepresentation or on an omission by Defendant.  And, in the absence of his written agreement that might have given some inkling as to what was said when he entered into that agreement (which, by the way, supposedly was negotiated many years after he was being charged the fees at issue in this case), there is nothing from which to infer what he might have been told.  Finally, Plaintiff likewise cannot show any reliance because he never looked at a single billing statement containing the allegedly misleading descriptions until August 2005, and then immediately canceled his service.  (Responses ¶ 9.)  He therefore cannot show that he relied on anything in his billing statements as a basis for recovering in this case.  In short, there is neither direct nor circumstantial evidence from which one can infer the existence of actual reliance of any sort.

Finally, the Court notes that, while Plaintiff has produced a copy of an online advertisement that ran from March 1998 to March 1999, (Gignac Decl., Ex. C [Advertisement at 1]), he has not introduced any facts to suggest that he actually knew about this advertisement, had seen it before, or had relied on it in any way.  In fact, because the advertisement was online and it is undisputed that Plaintiff "never conducted a business using a computer such as online banking; never bought or sold anything online, on the Internet; and never used a computer to conduct any business . . . " the record reflects that Plaintiff did not see this advertisement let alone relied on it. (Responses at ¶ 20.)   In that regard, Plaintiff's case is much like that described in Gutierrez v. Wells Fargo & Co., where the court held that the reliance element was lacking because the plaintiff had not presented evidence that he read or relied on any of the allegedly false advertising and marketing material included in the court record. 2009 WL 1246689, *1-4 (N.D. Cal. 2009).

Because Plaintiff has failed to produce any facts proving that he relied on a misrepresentation or omission, the reliance element for his CLRA and UCL claims are lacking.  Thus, this Court **GRANTS** Defendant's summary judgment motion as to the

1  CLRA and UCL claims.

2  **E.  PLAINTIFF'S CLAIM FOR INJUNCTIVE RELIEF**

3         If the plaintiff is seeking injunctive relief based on a violation of law, he or she

4  "must demonstrate that [he is] 'realistically threatened by a repetition of the violation."

5  Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006).

6         Here, Plaintiff's claim for injunctive relief is moot.  Plaintiff is no longer a

7  customer of Defendant's company.  (SUF, Ex. 1 [Herbenick Decl. at 2].)  As such,

8  Plaintiff is neither threatened by future fees nor alleged misrepresentations by

9  Defendant.  Further, Plaintiff also concedes that the claim for injunctive relief is moot

10  because this Court declined to certify the class in this action.  (Opp. at 17.)

11         Thus, this Court **GRANTS** Defendant's summary judgment motion for the

12  injunctive relief claim.

13                              **III.  CONCLUSION**

14         Defendant's motion for summary judgment on the Section 201(b) claim is

15  **DENIED.**  The motion for summary judgment on the breach of contract, UCL, CLRA

16  and injunction claims is **GRANTED.**

17         The parties are to meet and confer and to submit a proposed schedule

18  establishing dates for a pre-trial conference, trial and related proceedings.  The parties

19  should consult the Court's standard scheduling and case management order for guidance

20  in performing this task.

21         **IT IS SO ORDERED.**

22

23  DATED: October 19, 2010

24

25                                   _____

26                                   Judge Gary Allen Feess
                                     United States District Court
27

28